1  MARC J. FAGEL (Cal. Bar No. 154425)
   ROBERT TASHJIAN (Cal. Bar No. 191007)
2      tashjianr@sec.gov
   ELENA RO (Cal. Bar No. 197308)
3      roe@sec.gov

4  Attorneys for Plaintiff
   SECURITIES AND EXCHANGE
5  COMMISSION
   44 Montgomery Street, Suite 2600
6  San Francisco, California  94104
   Telephone:  (415) 705-2500
7  Facsimile:   (415) 705-2501

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11  SECURITIES AND EXCHANGE COMMISSION,   Case No.  09-CV-01177 RMW

12              Plaintiff,

13      vs.                                NOTICE OF MOTION AND MOTION FOR
                                           FINAL JUDGMENT AGAINST ALL
14  ALBERT K. HU,                          DEFENDANTS

15  ASENQUA, INC.,
    ASENQUA CAPITAL MANAGEMENT, LLC,       DATE:     April 26, 2013
16  AQC ASSET MANAGEMENT, LTD., and        TIME:     9:00 a.m.
    FIRESIDE CAPITAL MANAGEMENT, LTD.,     PLACE:  Courtroom 6, Fourth Floor

17              Defendants.

18

19

20

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION

2 **TO DEFENDANT ALBERT K. HU, THE DEFENDANT ENTITIES, AND**

3 **COUNSEL, IF ANY, PLEASE TAKE NOTICE THAT** plaintiff Securities and Exchange

4 Commission (the "Commission") hereby moves for final judgment against all defendants.

5 The Commission's motion is noticed for hearing on April 26, 2013, at 9:00 a.m. before the

6 Honorable Ronald Whyte, Judge of the District Court for the Northern District of California.

7       Separate notice has been provided Hu, who is in custody and not represented by legal

8 counsel in this matter. *See* Certificate of Service (attaching Special Notice of Motion to Pro

9 Se Defendant) (filed concurrently).

10       The Commission's motion is based on the principles of collateral estoppel and is

11 supported by facts necessarily decided in a related criminal trial against defendant Hu. The

12 entity defendants, controlled by defendant Hu, are not represented by legal counsel in this

13 action. The Commission moves for default judgment against the entity defendants based on

14 their failure to defend this action or to appear through counsel. The Commission seeks

15 injunctive relief against all defendants, as well as disgorgement of defendants' ill-gotten gains

16 and the imposition of civil monetary penalties, as authorized by the federal securities laws.

17       The Commission's motion is supported by this Memorandum of Points and

18 Authorities, the accompanying declaration of Robert L. Tashjian, all materials attached to the

19 declaration, the accompanying Request for Clerk's Entry of Default, the proposed judgment

20 submitted by the Commission, pleadings and papers filed on the Court's docket in this action

21 and the related criminal action captioned *United States v. Hu*, No. 09-CR-487 RMW (N.D.

22 Cal.), and such other oral or written evidence as may be presented at the hearing.

23

24

25

26

27

28

1

## STATEMENT OF ISSUES

2
    In deciding the Commission's motion, the Court must rule on the following issues:

3
    1.    Whether the criminal judgment against defendant Hu compels the conclusion

4
that he is also liable for violations of the antifraud provisions of the federal securities laws.

5
    2.    Whether default judgment should be entered against the entity defendants

6
based on their failure to appear through counsel and to defend the Commission's claims.

7
    3.    Whether the Court should grant the Commission's requested relief, including

8
the entry of permanent injunctions against future violations of the securities laws, an order

9
requiring defendants to disgorge their ill-gotten gains, and an order imposing civil monetary

10
penalties.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.     INTRODUCTION ......................................................................................... 1

II.    PROCEDURAL AND EVIDENTIARY BACKGROUND............................ 1

       A.    The Civil Claims and Criminal Indictment Against Hu ...................... 1

       B.    The Evidence Admitted at Hu's Criminal Trial .................................. 2

       C.    The Jury Instructions and Verdict........................................................ 6

III.   ANALYSIS................................................................................................... 8

       A.    Summary Judgment Should be Granted When the
             Issues Have Been Litigated ................................................................ 8

       B.    The Commission's Fraud Claims Based on the Same
             Alleged Facts Were Decided in the Government's
             Favor at the Criminal Trial ................................................................ 9

       C.    The Factual Basis for the Commission's Advisers Act
             Claims Were Also Adjudicated in the Government's
             Favor at the Criminal Trial .............................................................. 11

       D.    The Court Should Enter Default Judgment Against the
             Asenqua Defendants .......................................................................... 13

IV.    REQUESTED RELIEF AGAINST ALL DEFENDANTS ........................... 14

       A.    Permanent Injunctions ...................................................................... 14

       B.    Disgorgement and Prejudgment Interest ........................................... 15

       C.    Civil Penalties .................................................................................. 16

V.     CONCLUSION........................................................................................... 18

1

# TABLE OF AUTHORITIES

2

3  <u>CASES</u>

4  *Aaron v. SEC*, 446 U.S. 680 (1980) ................................................................. 11

5  *Basic Inc. v. Levinson,* 485 U.S. 224 (1988) .................................................. 10

6
7  *Emich Motors Corp. v. General Motors Corp.*,
     340 U.S. 558 (1951) ...................................................................................... 8

8  *Hinkle Northwest, Inc. v. SEC*, 641 F.2d 1304
9     (9th Cir. 1981) ............................................................................................. 8

10 *Ivers v. United States*, 581 F.2d 1362
      (9th Cir. 1978) ............................................................................................. 8

11
12 *Koehler v. Pulvers*, 614 F. Supp. 829
      (S.D. Cal. 1985) ......................................................................................... 10

13 *Matsushita Elec. Industrial Co., Ltd. v.*
      *Zenith Radio Corp.,* 475 U.S. 574 (1986) .................................................... 8
14
15 *Montana v. United States*, 440 U.S. 147 (1979) ............................................. 8

16 *Municipality of Anchorage v. Hitachi Cable, Ltd.*,
      547 F. Supp. 633 (D. Ala. 1982) .................................................................. 8

17 *SEC v. Bilzerian*, 29 F.3d 689 (D.C. Cir. 1994) .............................................. 8

18
19 *SEC v. Capital Gains Research Bureau, Inc.*, 375
      U.S. 180 (1963) .......................................................................................... 12

20 *SEC v. Colello*, 139 F.3d 674 (9th Cir. 1998) ................................................ 15

21 *SEC v. Cross Fin. Servs., Inc.*,
22    908 F. Supp. 718 (C.D. 1995) ..................................................................... 15

23 *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852
      (9th Cir. 2001) ......................................................................................... 9, 11
24
25 *SEC v. Dimensional Entertainment Corp.*,
      493 F. Supp. 1270 (S.D.N.Y. 1980) ........................................................ 8, 9

26 *SEC v. Everest Management Corp.*,
27    466 F. Supp. 167 (S.D.N.Y. 1979) .............................................................. 8

28 *SEC v. Fehn*, 97 F.3d 1276 (9th Cir. 1996) ................................................... 14

*SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450
(2d Cir. 1996) ............................................................................................ 15

*SEC v. First Pac. Bancorp*, 142 F.3d 1186
(9th Cir. 1998) ........................................................................................... 15

*SEC v. Gruenberg*, 989 F.2d 977 (8th Cir. 1993) ............................................. 8

*SEC v. Henke,* 275 F. Supp. 2d 1075
(N.D. Cal. 2003) ....................................................................................... 17

*SEC v. Holschuh*, 694 F.2d 130 (7th Cir. 1982) ............................................ 10

*SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1
(D.D.C. 1998) ............................................................................................ 17

*SEC v. M&A West, Inc.*, No. C-01-3376 VRW,
2005 WL 2988963 (N.D. Cal. Oct. 31, 2005) .......................................... 16

*SEC v. Murphy*, 626 F.2d 633 (9th Cir. 1980) ....................................... 10, 14

*SEC v. Pace*, 173 F. Supp. 2d 30 (D.D.C. 2001) .............................................. 9

*SEC v. Randolph*, 736 F.2d 525 (9th Cir. 1984) ........................................... 14

*SEC v. Rind*, 991 F.2d 1486 (9th Cir. 1993) .................................................. 15

*SEC v. Steadman*, 967 F.2d 636 (D.C. Cir. 1992) ......................................... 12

*SEC v. W. J. Howey Co.*, 328 U.S. 293 (1946) .............................................. 10

*SEC v. Zandford*, 535 U.S. 813 (2002) ..................................................... 9, 10

*Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040
(9th Cir. 2006) ............................................................................................. 9

*TSC Indus., Inc. v. Northway, Inc.*,
426 U.S. 438 (1976) ................................................................................... 10

*Vernazza v. SEC*, 327 F.3d 851 (9th Cir. 2003) ............................... 9, 10, 11, 12

*Western Pac. Fisheries, Inc. v. SS President Grant*,
730 F.2d 1280 (9th Cir. 1984) ................................................................... 16

STATUTES

15 U.S.C. § 77b(1) .......................................................................................... 10

15 U.S.C. § 77q(a) ............................................................................................ 9

15 U.S.C. § 77q(a)(2) ........................................................................................ 9

15 U.S.C. § 77t(b) ............................................................................................ 14

15 U.S.C. § 77t(d)(2) .................................................................................. 16, 17

15 U.S.C. § 78c(a)(10) ...................................................................................... 10

15 U.S.C. § 78j(b) ............................................................................................... 9

15 U.S.C. § 78u(d) ............................................................................................ 16

15 U.S.C. § 78u(d)(1) ....................................................................................... 14

15 U.S.C. § 80b-2(18) ....................................................................................... 10

15 U.S.C. § 80b-2(a)(11) ................................................................................... 13

15 U.S.C. § 80b-6(1) ......................................................................................... 12

15 U.S.C. § 80b-6(2) ......................................................................................... 12

15 U.S.C. § 80b-6(4) ......................................................................................... 12

15 U.S.C. § 80b-9(d) ......................................................................................... 14

15 U.S.C. § 80b-9(e) ......................................................................................... 16

18 U.S.C. § 1343 ................................................................................................. 2

28 U.S.C. § 1961 ............................................................................................... 16

OTHER AUTHORITIES

*In the Matter of Alexander V. Stein*, 59 S.E.C.
    Docket 1115, 1995 WL 358127 (June 8, 1995) ......................................... 13

*Prohibition of Fraud by Advisers to Certain Pooled
    Investment Vehicles*, Advisers Act Release
    No. 2628, 91 SEC Docket 938,
    2007 WL2239114 (Aug. 3, 2007) ............................................................... 12

RULES

Civil L.R. 3-9(b) ............................................................................................... 13

FED. R. CIV. P. 55(a) .......................................................................................... 13

## I.      INTRODUCTION

In a criminal trial, a jury convicted defendant Albert K. Hu on seven counts of wire fraud, finding him guilty of defrauding investors in fictional hedge funds by falsifying investment documents, quarterly account statements, and other financial statements.  These false documents gave the aura of authenticity to Hu's scheme to defraud investors and induced them into believing that credible and reliable "gatekeepers" safeguarded their investments.  In their verdict, the jury necessarily found that Hu made materially false and misleading statements to investors.  Because these facts also establish Hu's violations of the antifraud provisions of the securities laws, the Court should enter summary judgment against him based on traditional legal principles of collateral estoppel.

Defendants Asenqua, Inc., Asenqua Capital Management, LLC, AQC Asset Management, Ltd., and Fireside Capital Management, Ltd. (collectively, the "Asenqua defendants"), are entities created and controlled by Hu.  These defendants have failed to defend the Commission's claims or even to retain legal counsel, as required by the Court's local rules.  The Court should thus enter default judgment against the Asenqua defendants.

For these reasons, as discussed further in this memorandum, the Commission respectfully requests that the Court enter final judgment against all defendants in this action.

## II.     PROCEDURAL AND EVIDENTIARY BACKGROUND

### A.      The Civil Claims and Criminal Indictment Against Hu

The Commission filed its Complaint against Hu and four associated Asenqua defendants on March 18, 2009.  *See* Exh. A (Compl.).[1]  The Commission alleged violations of the antifraud provisions of the Securities Act of 1933 ("Securities Act"), the Securities Exchange Act of 1934 ("Exchange Act"), and the Investment Advisers Act of 1940 ("Advisers Act").  *See id.* at 10-12 (alleging violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Section 17(a) of the Securities Act, Sections 206(1) and 206(2) of the Advisers Act, and Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder.)  At

---

[1]  Referenced exhibits are attached to the accompanying Declaration of Robert L. Tashjian submitted in support of this motion and are cited as "Exh. __."

the request of the Commission, the Court entered a Temporary Restraining Order and a subsequent Preliminary Injunction against Hu and the Asenqua defendants.  *See* Exh. E (TRO); Exh. F (PI).

The Grand Jury returned a criminal indictment against Hu on May 6, 2009.  *See* Exh. J (Indictment).  The Indictment charged Hu with seven counts of wire fraud in violation of 18 U.S.C. § 1343.  Because the scheme to defraud investors was based on the same set of allegations in both cases, the Court related the criminal charges with the Commission's civil action.  *See* Exh. G (Order).

In the Commission's action, Hu's legal counsel moved to withdraw in May 2010.  *See* Exh. H (Motion).  The Court granted the motion on June 4, 2010.  *See* Exh. I (Order).  The Court provided notice to all defendants that "you may not in most cases represent yourself if you are . . . [a] corporation; [a] partnership; [or a] limited liability company."  *Id*. at 2.  The Court warned defendants that "Failure to retain an attorney may lead to . . . the entry of a default judgment."  *Id.*  Hu and the Asenqua defendants have been unrepresented in the Commission's action to this date.

Hu obtained legal counsel in the criminal action, however, and his trial commenced on June 4, 2012.  *See* Exh. K (Minute Entry).

**B.      The Evidence Admitted at Hu's Criminal Trial**

Hu is the former Chief Executive Officer of Aplex, Inc., a privately-held company based in Sunnyvale.  *See* Reporter's Transcript, *United States v. Hu*, No. 09-CR-487 RMW (N.D. Cal.) ("R.T.") at 60-61 (Lin); *id*. at 879-80, 883 (Pollace).[2]  Aplex ran out of money and went out of business in 1999.  *Id*. at 884 (Pollace).  Shortly thereafter, Hu established a hedge fund enterprise that he called "Asenqua."  *Id*. at 885 (Pollace).

---

[2] Cited excerpts of the Reporter's Transcript of the proceedings at Hu's criminal trial are attached to the accompanying declaration.  *See* Tashjian Decl. ¶ 18 & Exh. P.  The testifying witness follows the citation in (parentheses).  Relevant exhibits admitted into evidence at the trial are referenced herein by their trial exhibit numbers (*e.g.*, Exh. 2) and are attached to the Tashjian Declaration as Exhibits Q-W.

1   By 2004, Hu was actively soliciting investments in Asenqua hedge funds.  *See* R.T. at

2   63-64 (Lin); *id.* at 373-74, 380-81 (Doong).  Hu boasted about the purported performance of

3   the Asenqua hedge funds:  according to a Power Point presentation that he provided investors,

4   the funds appeared successful and showed a "high percentage gain."  *Id.* at 66 (Lin).  By

5   2007, Hu raised at least $4.98 million from investors.  *Id.* at 125 (Lin) (investing $1 million);

6   *id.* at 484 (Doong) (investing combined $1.13 million between herself and sister); *id.* at 609-

7   10, 612 (Verdiell) (investing $2 million).[3]

8   Under the terms of the investment agreements, investors became limited partners or

9   shareholders in various Asenqua hedge funds.  *See* R.T. at 88 (Lin) (identifying Exhibit No. 2

10   as the Asenqua Beta Fund, LP investment agreement); Exh. 2 at HU-000051 (describing

11   limited partnership interests in Paragraph No. 2); R.T. at 384-86, 456-57 (Doong) (identifying

12   selected pages of Exhibit No. 63 as the Fireside LS Fund, Ltd. investment agreement);

13   Exh. 63 at HU-01114A (describing Participating Shares in Paragraph No. 2).  Hu and the

14   Asenqua defendants controlled the Asenqua hedge funds' investment strategy.  *See* R.T. at 89

15   (Lin) (identifying Hu signature on subscription agreement); Exh. 2 at HU-000047 (identifying

16   Asenqua, Inc. as "Investment Manager"); *id.* at HU-000062 (Hu signature); R.T. at 457-58

17   (Doong) (identifying Hu signature); Exh. 63 at HU-1127A (Hu signature).

18   Investments in the Asenqua hedge funds were to be pooled into various "master

19   funds" controlled by Hu and the Asenqua defendants.  *See* R.T. at 617-18 (Verdiell)

20   (identifying Exhibit No. 12 as the "Fireside" investment memorandum); Exh. 12 at HU-

21   000147 (describing "master/feeder" fund structure).  Hu promised to execute his investment

22   strategy using the collective investor funds held in each master fund.  *See* Exh. 12 at HU-

23   000147.  Hu and the Asenqua defendants were allowed to earn fees based on a percentage of

24   the returns as compensation.  *See* Exh. 12 at HU-000149 (investment manager to earn 0.375

25   percent annually of assets under management and 20 percent "incentive" fee).  Hu and the

26   Asenqua defendants further committed that the returns, after subtracting costs and

27   _____
[3] Another investor, Zhou Ye, invested $825,000 in the Asenqua funds between 2003 and

28   2005.  *See* Exh. D (Ye Decl.) ¶ 3 & Exh. B (attached thereto).

management fees, would be allocated among investors across the Asenqua hedge funds.  *See* Exh. 12 at HU-00174.

Hu misled investors from the beginning.  The investment agreements provided by Hu to investors included falsehoods designed to lend legitimacy to the Asenqua enterprise and give confidence to investors about the safety of their investment.  The agreements, for example, identified prestigious international law firms as counsel to various Asenqua hedge funds.  *See* Exh. 2 at HU-000059 (subscription agreement identifying "Heller Ehrman Rose LLP" as the legal counsel to the Asenqua Beta Fund, LP); Exh. 63 at HU-001123A (subscription agreement identifying Proskauer Rose as the legal counsel to the Fireside LS Fund, LP); Exh. 12 at HU-000152 (private placement memorandum identifying "Pillsbury Winthrop" as the legal counsel to the Fireside LS Fund, LP).  These representations were false:  although some of the firms had provided unrelated legal advice to Hu or Asenqua entities, none served as legal counsel to the Asenqua hedge funds as specified in the investment agreements.  *See* R.T. at 320-21, 327 (Arthur) (testifying that Proskauer firm had not been retained by Asenqua Funds); *id.* at 328, 338-40 (Rappaport) (same).[4]

Similarly, the Fireside LS Fund, LP investment agreement stated that GlobeOp Financial Services S.A., an established fund administrator, had been retained to manage the Asenqua hedge funds' back office operations.  *See* Exh. 12 at HU-000148.  This representation was false.  *See* R.T. at 558, 566, 569 (Dulberg) (testifying that GlobeOp Financial Services had not been retained to provide services to any Asenqua Fund).

The Fireside LS Fund, LP investment agreement claimed that Seiler LLP, a Certified Public Accounting firm with offices in Redwood City, California, had been retained to review the Asenqua hedge funds' books and records.  *See* R.T. at 626-27 (Verdiell); Exh. 12 at

---

[4] *See also* Exh. B (Chang Decl.) ¶ 5 (stating that Heller Ehrman White & McAuliffe has not served as counsel to Hu or the Asenqua defendants); Exh. C (Gould Decl.) ¶ 4 (stating that Pillsbury Winthrop Shaw Pittman briefly represented Hu from August 2006 to April 2007, but did not prepare the offering documents for the Fireside LS Fund, LP and did not represent the fund).

1   HU_000168.  This claim was false:  Seiler provided no services to the Asenqua hedge funds.

2   *See* R.T. at 746, 751, 756 (Born).

3          Hu provided quarterly financial statements to investors in the Asenqua hedge funds.

4   *See* R.T. at 94-95 (Lin) (identifying Exhibit Nos. 3 and 4 as fund statements); R.T. at 426-28

5   (Doong) (identifying selected pages in Exhibit No. 63 as fund statements); R.T. at 635-36

6   (Verdiell) (identifying Exhibit Nos. 14 to 18 as fund statements).  The statements represented

7   that the Asenqua hedge funds performed well.  *See, e.g.*, Exh. 63 at HU-001024A (stating that

8   fund had grown by more than 10 percent in 2004).  Each statement bore the purported

9   signature of "Tony Pollace" as the Chief Financial Officer.  *See, e.g.*, Exh. 3 (printing name as

10  "Anthony Pollack," but signing name "Tony Pollace"); Exh. 63 at HU-001025A; Exh. 18.

11  Mr. Pollace, however, was never employed at any Asenqua entity.  *See* R.T. at 889, 894

12  (Pollace).  Pollace neither signed the statements nor authorized Hu to sign his name.  R.T. at

13  897-900 (Pollace).

14         In 2005, Hu provided investors with an audit opinion letter from a firm called

15  "Castillo, Lyn, Cohen & Vijay," attaching Asenqua financial statements for the year ended

16  December 31, 2004.  *See* R.T. at 70-71 (Lin) (identifying Exhibit No. 1 as audited financial

17  statements provided by Hu); R.T. at 435 (Doong) (identifying selected pages of Exhibit No.

18  63 as audited financial statements provided by Hu); *see also* R.T. at 628 (Verdiell) (referring

19  to auditor identified in investment memorandum).  The letter represented that Castillo, Lyn,

20  Cohen & Vijay were certified public accountants who had performed an "independent" audit

21  on the Asenqua hedge funds and substantiated the assets and performance reflected in the

22  attached financial statements.  *See* Exh. 1 at HUH-000039; Exh. 63 at HU-000995-A.  The

23  financial statements reported identical "net asset values" for calendar year-end 2003 and 2004

24  for the two different funds:  $110,573,431 (2003) and $140,870,552 (2004).  *See* Exh. 1 at

25  HU-000040; Exh. 63 at HU-000996A.  The statements also reported identical year-over-year

26  growth of the net asset values for the two funds for calendar year-end 2003 and 2004:  34.12

27  percent (2003) and 27.40 percent (2004).  *See id.*

28

1    No record of Castillo, Lyn, Cohen & Vijay exists with the California Board of

2    Accountancy, however.  *See* R.T. at 347-48, 357 (Franzella).  The firm's address in San

3    Francisco is only a "virtual office."  *See* R.T. at 570-71, 576-77 (Szto).  Payment for the

4    Castillo, Lyn, Cohen & Vijay virtual office was charged to Hu's credit card.  *Id.* at 586-87

5    (referring to credit card number and Stipulation No. 3, in which parties agreed that Hu was the

6    account holder).

7    Hu told investors in October 2005 that the Asenqua hedge funds needed to be

8    relocated to Singapore.  *See* R.T. at 447 (Doong).  Hu asked that investors authorize the

9    transfer of funds into accounts Hu opened at financial institutions in Singapore.  *See id.* at

10   109-10 (Lin); *id.* at 449 (Doong).

11   Hu did not comply with the custody arrangements set forth in the investor agreements.

12   For example, Hu transferred investor funds to unrelated personal accounts and spent investor

13   funds on personal items.  *See* R.T. at 775-78,  781-82, 792, 802, 820-21, 822-23 (Fine).  There

14   is no record that Hu invested any funds in accordance with the investment agreements.  *See,*

15   *e.g., id.* at 822-23.

16   In 2007 and 2008, investors requested that Hu return their investments.  *See* R.T. at

17   130 (Lin); *id.* at 474 (Doong); *id.* at 655 (Verdiell).  Hu stalled, often asking for additional

18   time to honor the investors' requests.  *See id.* at 132, 134-35 (Lin); *id.* at 474 (Doong).  Hu

19   stopped returning investors' telephone calls and e-mail messages, and stopped providing

20   quarterly statements for the Asenqua hedge funds.  *See id.* at 655-56 (Verdiell).

21   **C.    The Jury Instructions and Verdict**

22   At the conclusion of the trial, the Court instructed the jury on the seven counts of wire

23   fraud.  *See* R.T. at 1113-14 (describing each count).  The Court further instructed the jury that

24   the Government must prove each of the following elements beyond a reasonable doubt:

25              First, the defendant knowingly devised a ***scheme or plan to defraud***, or
             a [scheme] or ***plan for obtaining money*** or property ***by means of false or***
26           ***fraudulent pretenses or representations*** or promises, with all of you agreeing
             on at least one particular false or fraudulent pretense, representation or promise
27           that was made.

28

Second, the defendant knew that the pretenses, representations or promises were false or fraudulent.

Third, the false or fraudulent pretenses representations or promises that were made as part of the scheme or plan were *material*.

Fourth, the defendant acted with the ***intent to defraud***, that is the [intent] to deceive or cheat.

And fifth, the defendant used or caused to be used interstate or international wires to carry out an essential part of the scheme.

*See* R.T. at 1115 (emphasis added).

The Court instructed the jury with respect to the following seven specific "fraudulent statements, representations, or promises" alleged by the Government:

A, that GlobeOp Financial Services was the fund administrator for defendant Hu's Fireside LS Fund.

B, the law firm Proskauer Rose was engaged as legal counsel for defendant Hu's Fireside LS fund.

C, the firm of Castillo, Lyn, Cohen & Vijay was an independent auditor for defendant Asenqua Beta Fund and Fireside LS Fund.

D, that an individual named Tony Pollace was the Chief Financial Officer of the Asenqua Beta Fund and the Fireside LS Fund and that Pollace had signed off on quarterly financial statements of those hedge funds which defendant Hu provided to investors.

E, that as of May 2007 the minimum amount individuals were investing in the Fireside LS Fund to date was $1 million.

F, that defendant Hu would pay investors rates of return as high as 20 to 30 percent annually and that these were historic rates of return for his hedge fund.

And G, that defendant Hu would obtain these high rate returns for investors primarily by investing their funds in technology-related securities.

*See* R.T. at 1117-18.

The jury returned a verdict of guilty on all seven counts on June 20, 2012.  *See* Exh. L (Verdict Form); R.T. at 1130-31.  The Court subsequently sentenced Hu to a term of 144 months in custody.  *See* Exh. N (Minute Entry).  The Court entered final judgment on

1  January 25, 2013, deferring only determination on the final amount of restitution until after a

2  hearing currently scheduled for March 18, 2013.  *See* Exh. O (Judgment).[5]

3  **III.   ANALYSIS**

4      **A.      Summary Judgment Should be Granted When the Issues Have
               Been Litigated**

5

6          Summary judgment should be entered, as a matter of law, where "the record taken as a

7  whole could not lead a rational trier of fact to find for the nonmoving party, there is no

8  genuine issue for trial."  *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S.

9  574, 587 (1986).  Where factual findings underlying a criminal conviction establish a

10 violation of the securities laws in a civil case, the criminal judgment against the defendant

11 resolves those facts in the civil case.  *Hinkle Northwest, Inc. v. SEC,* 641 F.2d 1304, 1308-09

12 (9th Cir. 1981); *Municipality of Anchorage v. Hitachi Cable, Ltd.*, 547 F. Supp. 633, 641 (D.

13 Ala. 1982); *SEC v. Dimensional Entertainment Corp.*, 493 F. Supp. 1270, 1274 (S.D.N.Y.

14 1980).  Under the doctrine of collateral estoppel, an issue of fact or law necessary to a

15 judgment is conclusive against a party in subsequent litigation.  *Montana v. United States*, 440

16 U.S. 147, 153 (1979).

17         "It is well established that a prior criminal conviction may work an estoppel in favor

18 of the Government in a subsequent civil proceeding.  Such estoppel extends to questions

19 'distinctly put in issue and directly determined' in the criminal prosecution."  *Emich Motors*

20 *Corp. v. General Motors Corp.*, 340 U.S. 558, 568-69 (1951) (citations omitted);  *accord SEC*

21 *v. Bilzerian*, 29 F.3d 689, 694 (D.C. Cir. 1994); *SEC v. Gruenberg*, 989 F.2d 977, 978 (8th

22 Cir. 1993); *SEC v. Everest Management Corp.*, 466 F. Supp. 167, 172 (S.D.N.Y. 1979).

23         So long as the factual bases for the two actions are the same, the doctrine will apply

24 even where the statute charged in the successive civil suit is not identical to the criminal

25 statute.  *Ivers v. United States*, 581 F.2d 1362, 1367 (9th Cir. 1978); *accord SEC v. Pace*, 173

26 _____

27 [5]  The Government, concurring with the Probation Department, requests that the Court order
   Hu to pay restitution "totaling approximately $6.5 million."  *See* Exh. M (United States'

28 Sentencing Mem.) at 10.

1    F. Supp. 2d 30, 33 (D.D.C. 2001) (finding that conviction for two counts of wire fraud

2    collaterally estopped defendant from contesting liability for violating Sections 10(b) and

3    13(b)(5) of the Exchange Act and Rules 10b-5 and 13b2-1, for financial reporting fraud and

4    misappropriation); *Dimensional Entertainment, supra,* 493 F. Supp. at 1275-77 (finding that

5    wire fraud conviction collaterally estopped re-litigation of Exchange Act Section 10(b)

6    claims, even though jury in criminal case acquitted the defendant on the very same Section

7    10(b) charges).

8           **B.     The Commission's Fraud Claims Based on the Same Alleged Facts
                      Were Decided in the Government's Favor at the Criminal Trial**
9

10          The Commission alleges that Hu violated the antifraud provisions of the Securities Act

11   and the Exchange Act.  *See* Exh. A (Compl.) ¶¶ 43-48 (first and second claims).

12   Section 17(a) of the Securities Act prohibits fraud in the "offer or sale" of securities.

13   15 U.S.C. § 77q(a).  Section 10(b) of the Exchange Act and Rule 10b-5 thereunder prohibit

14   fraud "in connection with the purchase or sale" of securities.  *See* 15 U.S.C. § 78j(b);

15   17 C.F.R. § 240.10b-5.  The antifraud provisions prohibit:  (1) employing any device, scheme

16   or artifice to defraud; (2) making material misstatements of fact or omitting to state material

17   facts necessary to make statements made not misleading; and (3) engaging in any act or

18   practice that operates as a fraud.  *See, e.g., SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 855-56

19   (9th Cir. 2001) (citing the antifraud provisions).  Section 17(a)(2) requires additional proof

20   that the defendant obtained "money or property" through the alleged misrepresentations.

21   15 U.S.C. § 77q(a)(2); *see Vernazza v. SEC*, 327 F.3d 851, 858 (9th Cir. 2003).[6]

22          Here, the evidence admitted by the Court established that Hu defrauded investors by

23   selling limited partnership interests and shares in various funds that he claimed to operate.

24   _____

25   [6] The nexus required by Section 10(b) and Rule 10b-5 between the alleged violative conduct
     and the purchase or sale of a security is satisfied if a scheme to defraud coincides with the
26   purchase or sale of securities, whether or not accompanied by a particular misrepresentation
     or omission.  *SEC v. Zandford*, 535 U.S. 813, 820-22 (2002); *Simpson v. AOL Time Warner
27   Inc.*, 452 F.3d 1040, 1050-51 (9th Cir. 2006) (reasoning that misrepresentations about a
     company's revenue may coincide with the purchase or sale of securities and thus satisfy the
28   requirement).

These shares and limited partnership agreements are securities under the federal securities laws.  15 U.S.C. § 77b(1) (defining "security" under the Securities Act); 15 U.S.C. § 78c(a)(10) (including "investment contract" in Exchange Act definition); 15 U.S.C. § 80b-2(18) (Advisers Act).  According to the Ninth Circuit, a "limited partnership generally is a security because, by definition, it involves investment in a common enterprise with profits to come solely from the efforts of others."  *SEC v. Murphy*, 626 F.2d 633, 640-41 (9th Cir. 1980) (citing *SEC v. W. J. Howey Co.*, 328 U.S. 293, 301 (1946); *SEC v. Holschuh*, 694 F.2d 130, 137 (7th Cir. 1982) (concurring).  Because the Asenqua investors' expectations of returns came solely from the efforts of Hu, their investments in limited partnership interests in the Asenqua hedge funds amounted to "investment contracts," and thus securities.

The jury thus necessarily found that Hu's misrepresentations and omissions—concerning the fund administrator, the legal counsel to the funds, the auditor to the funds, and the funds' investment returns, among others—occurred in the offer and sale of securities, from which Hu received money or property.  *See Vernazza*, 327 F.3d at 858.  His subsequent misrepresentations and omissions about the "Chief Financial Officer," the audited financial statements, occurred in furtherance of, and "coincided with," his investment scheme and thus satisfy the required nexus with the purchase and sale of securities.  *See Zandford, supra* n.6, 535 U.S. at 820-22.

As instructed by the Court, the jury also necessarily found that Hu's fraud was material to investors.  Information is material if there is a substantial likelihood that disclosure of the misstated or omitted fact would have significantly altered the "total mix" of information available to a reasonable investor.  *Basic Inc. v. Levinson,* 485 U.S. 224, 231-32 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).  "Surely the materiality of information relating to financial condition, solvency and profitability is not subject to serious challenge."  *Murphy*, 626 F.2d at 653; *see Koehler v. Pulvers*, 614 F. Supp. 829, 842 (S.D. Cal. 1985) (finding that omissions and misrepresentations about "the use of investor funds" material).  Here, Hu misled investors about the trustworthiness of the Asenqua hedge funds, about the personnel who managed the Asenqua hedge funds, and about the

1  management of investor funds.  These misrepresentations and omissions went to the essence

2  of the purported enterprise.

3          Finally, as the jury found, Hu intentionally swindled investors.  Scienter, or intentional

4  deception, is required to establish violations of Section 17(a)(1), Section 10(b), and Rule 10b-

5  5.  *Aaron v. SEC*, 446 U.S. 680, 691, 696-97 (1980).  In the Ninth Circuit, "scienter is

6  satisfied by recklessness."  *Dain Rauscher*, 254 F.3d at 856; *see Vernazza*, 327 F.3d at 860.

7  Violations of Sections 17(a)(2) and 17(a)(3) require only a showing of negligence.  *Dain*

8  *Rauscher*, 254 F.3d at 856; *see Aaron*, 446 U.S. at 696-97.  In this matter, the Asenqua hedge

9  fund investment agreements were designed to mislead investors into believing that reputable

10  law firms, auditors, and fund administrators stood behind Hu and the Asenqua funds and

11  safeguarded the investments.  For instance, Hu fabricated an audit opinion letter from

12  "Castillo, Lyn, Cohen & Vijay," to substantiate the assets and performance of the Asenqua

13  hedge funds and failed to inform investors of his financial entanglement with the firm.  Hu

14  lied to investors about the Asenqua hedge funds' supposed "Chief Financial Officer,"

15  Anthony Pollace, and forged Pollace's signature to quarterly account statements.

16          In returning its guilty verdict on the seven counts of wire fraud, following the

17  instructions of the Court, the jury necessarily determined facts in the Government's favor that

18  support each element of the Commission's antifraud claims—that is, that Hu intentionally

19  made material misrepresentations in connection with the purchase and sale of interests in his

20  purported hedge funds.  The Court should enter summary judgment against Hu, finding that

21  the criminal judgment establishes his liability for violations of Section 17(a) of the Securities

22  Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

23          **C.      The Factual Basis for the Commission's Advisers Act Claims Were
               Also Adjudicated in the Government's Favor at the Criminal Trial**

24

25          In addition, the jury determined facts that establish Hu's liability for violations of the

26  Commission's Advisers Act claims.  *See* Exh. A (Compl.) ¶¶ 49-57 (third and fourth claims).

27  Section 206 of the Advisers Act makes it unlawful for any "investment adviser," directly or

28  indirectly:

(1) to employ any device, scheme, or artifice to defraud any client or prospective client;

(2) to engage in any transaction, practice or course of business which operates as a fraud or deceit upon any client or prospective client; . . .

(4) to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative.

15 U.S.C. §§ 80b-6(1), 80b-6(2), 80b-6(4) .  Additionally, Rule 206(4)-8 under the Advisers Act prohibits any investment adviser to a "pooled investment vehicle" to make materially false misrepresentations or omissions, or to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative.  17 C.F.R. § 275.206(4)-8; *see Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles*, Advisers Act Release No. 2628, 91 SEC Docket 938, 2007 WL2239114, at *3 nn.21 & 22 (Aug. 3, 2007) (explaining that pooled investment vehicles include "hedge funds, private equity funds, venture capital funds, and other types of privately offered pools that invest in securities").

The elements of the Adviser Act claims thus are similar to the antifraud claims in the Securities Act and Exchange Act.  *See SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 191-92, 194 (1963) (tracing legislative history of Advisers Act in support of finding that advisers owe fiduciary duty to deal with their clients in utmost good faith and complete candor); *Vernazza, supra*, 327 F.3d at 858 (comparing Section 17(a), Section 10(b) and Section 206 and finding that "the element of a materially false statement is satisfied by essentially the same conduct for all of the statutes in question.").[7]

An "investment adviser," the additional element necessary to establish liability under the Advisers Act, is defined to include "any person, who for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value

---

[7]  Section 206(1) requires a showing of scienter.  *Vernazza*, 327 F.3d at 860 (finding that recklessness satisfies scienter standard).  Scienter is not an element of Section 206(2), however.  *Capital Gains*, 375 U.S. at 195 (concluding that Congress did not "intend to require proof of intent to injure").  Section 206(4), similarly, does not require scienter.  *SEC v. Steadman*, 967 F.2d 636, 647 (D.C. Cir. 1992) (analogizing Section 206(4) to Sections 17(a)(2) and 17(a)(3) of the Securities Act).  In its release accompanying the enactment of Rule 206(4)-8, the Commission stated that it intended the rule to encompass negligent conduct.  *See* Advisers Act Release No. 2628, *supra*, 2007 WL2239114, at *4.

of securities or as to the advisability of investing in, purchasing, or selling securities."

15 U.S.C. § 80b-2(a)(11).  Misappropriation of investor assets also constitutes

"compensation."  *See In the Matter of Alexander V. Stein*, Advisers Act Release No. 1497,

59 SEC Docket 1115, 1995 WL 358127, at *2 n.13 (June 8, 1995).

In this case, the jury found that Hu obtained money from investors as the "investment

manager" to the Asenqua hedge funds.  Under the terms of the investment agreements, Hu

was to receive a percentage of the returns on the Asenqua hedge funds as compensation.

Accordingly, Hu meets the definition of an "investment adviser" under the Advisers Act.  As

discussed above, *see* Part III(B) *supra*, the jury further found that Hu intentionally made

material misrepresentations and omissions in the Asenqua hedge fund investment agreements,

audit reports, and account statements, and misappropriated investor funds.  For these reasons,

the Court should enter summary judgment against Hu, finding him liable for violations of

Sections 206(1), 206(2), 206(4) the Advisers Act and Rule 206(4)-8 thereunder.

**D.**     **The Court Should Enter Default Judgment Against the Asenqua Defendants**

"A corporation, unincorporated association, partnership or other such entity may

appear only through a member of the bar of this Court."  Civil L.R. 3-9(b).   The Asenqua

defendants have not been represented by counsel since June 4, 2010, when the Court granted

former counsel's motion to withdraw.  *See* Exh. I.  The Commission has simultaneously

requested that the Clerk enter the Asenqua defendants' default based on their failure to appear

and defend this action.  *See* FED. R. CIV. P. 55(a); Request for Clerk's Entry of Default (filed

concurrently).

Each of the Asenqua defendants is an entity requiring representation through legal

counsel.  *See* Exh. A (Compl.) ¶¶ 12-15 (alleging place of incorporation or organization).  .

Substantial evidence admitted at Hu's criminal trial establishes that Hu acted through, and in

concert with, the Asenqua defendants.  *See, e.g.,* Exh. 2 at HU-000047 (identifying defendant

Asenqua, Inc. as Investment Manager of fund); Exh. 63 at HU-001110A (identify defendant

1   Fireside Capital Management, Ltd. as Investment Manager of fund).[8]   Based on this evidence,

2   this Court should enter a default judgment against the Asenqua defendants for their failure to

3   defend the claims against them and order the relief described below.

4   **IV.    REQUESTED RELIEF AGAINST ALL DEFENDANTS**

5       **A.    Permanent Injunctions**

6       The federal securities laws authorize the Commission to seek, and the Court to grant,

7   an injunction against acts or practices that violate the securities laws.  *See* 15 U.S.C. § 77t(b)

8   (Securities Act authorization); 15 U.S.C. § 78u(d)(1) (Exchange Act authorization); 15 U.S.C.

9   § 80b-9(d) (Advisers Act authorization).  A permanent injunction is the Commission's

10  primary weapon against future violations of the securities laws.  *See SEC v. Randolph*, 736

11  F.2d 525, 529 (9th Cir. 1984).  Whenever there is "a reasonable likelihood of future violations

12  of the securities laws," a permanent injunction is appropriate.  *SEC v. Fehn*, 97 F.3d 1276,

13  1295 (9th Cir. 1996) (quoting *Murphy*, 626 F.2d at 655).  "The existence of past violations

14  may give rise to an inference that there will be future violations; and the fact that the

15  defendant is currently complying with the securities laws does not preclude an injunction."

16  *Murphy*, 626 F.2d at 655.

17      To assess the likelihood of future violations, courts consider the totality of the

18  circumstances surrounding the past violations, including:  (1) the degree of scienter involved;

19  (2) the isolated or recurrent nature of the violations; (3) the defendant's recognition of the

20  wrongfulness of his conduct; (4) the likelihood, because of the defendant's line of work, of

21  future violations; and (5) the sincerity of assurances against future violations.  *Fehn*, 97 F.3d

22  at 1295.

23      This Court should permanently enjoin both Hu and the Asenqua defendants against

24  future violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act

25  and Rule 10b-5 thereunder, and Hu from violations of Sections 206(1), 206(2), and 206(4) of

26  _____

27  [8]  In addition, evidence previously submitted by the Commission establishes that Hu controlled
    each of the Asenqua defendants.  *See* SEC Mem. ISO TRO (Dkt. 8) at n.1 (citing sworn

28  declarations).

1   the Advisers Act and Rule 206(4)-8 thereunder.  *See* [Proposed] Final Judgment (filed

2   concurrently).  The egregiousness of Hu's violations and the substantial planning, intent, and

3   deception behind his years-long scheme require the Court-ordered injunction against future

4   violations.  Each of the Asenqua defendants should also be enjoined:  each was organized by

5   Hu for the purpose of furthering the fraud perpetrated on investors.  A permanent injunction

6   would thus ensure that the entities are not re-capitalized and used again in a similar

7   manipulative scheme.  For these reasons, the entry of permanent injunctions against each

8   defendant  is an appropriate remedy in this matter.

9          **B.     Disgorgement and Prejudgment Interest**

10          Disgorgement is an equitable remedy that deprives a defendant of the benefits of his

11   wrongful conduct.  *SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993).  The Ninth Circuit has

12   observed that disgorgement plays a central role in securities law enforcement.  *Id.* at 1491.  To

13   obtain disgorgement, the Commission need not provide a detailed accounting; rather

14   disgorgement need be only a reasonable approximation of a defendant's unjust enrichment.

15   *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1474-75 (2d Cir. 1996).

16          Hu and the Asenqua defendants should be held jointly and severally liable for the full

17   amount for the full amount of the profits.  "[W]here two or more individuals or entities

18   collaborate or have a close relationship in engaging in the violations of the securities laws,

19   they have been held jointly and severally liable for the disgorgement of illegally obtained

20   proceeds."  *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191-92 (9th Cir. 1998).

21          In this case, Hu and the Asenqua defendants raised at least $4.98 million from five

22   investors.  *See* R.T. at 125-26 (Lin) (investing $1 million); *id.* at 484 (Doong) (investing

23   combined $1.13 million between herself and sister); *id.* at 612 (Verdiell) (investing

24   $2 million); *see also* Exh. D (Ye Decl.) ¶ 3 (investing $825,000). Prejudgment interest should

25   be assessed on the disgorgement to ensure that defendants do not benefit from the lapse of

26   time between the stock sales and the resolution of this action against him.  *SEC v. Cross Fin.*

27   *Servs., Inc.*, 908 F. Supp. 718, 734 (C.D. 1995), *aff'd sub nom. SEC v. Colello*, 139 F.3d 674

28   (9th Cir. 1998).  In the Ninth Circuit, prejudgment interest may be calculated using the

interest rate specified for postjudgment interest—the one-year constant maturity Treasury

yield.  *See* 28 U.S.C. § 1961; *Western Pac. Fisheries, Inc. v. SS President Grant*, 730 F.2d

1280, 1289 (9th Cir. 1984); *SEC v. M&A West, Inc.*, No. C-01-3376 VRW, 2005 WL

2988963, at *2 (N.D. Cal. Oct. 31, 2005) (including formula for computation), *aff'd in part

and rev'd in part*, 538 F.3d at 1054.

Here, the amount of prejudgment interest accruing from the time that each investor

transferred funds to Hu equals at least $1,644,238.  *See* Tashjian Decl. ¶ 27 & Exh. X

(including interest rates and computation).  Thus, the full amount of disgorgement and

prejudgment interest requested by the Commission totals $6,624,238.  *Id*.  The Commission

notes, however, that the Government similarly requested that the Court order Hu to pay

"approximately $6.5 million" in restitution, as recommended by the Probation Department.

*See* United States' Sentencing Mem., *United States v. Hu*, Case No. 09-CR-487 RMW (N.D.

Cal.) (Dkt. 99) at 10.  Although the calculation of the amounts of restitution and disgorgement

differ (restitution is measured by the loss of victims; disgorgement is measured by the

perpetrator's gain), in this case the amounts are comparable, if not identical.  The Commission

is not privy to the information gathered by the Probation Department and therefore requests

that the Court allow additional victims who submitted losses for verification by the Probation

Department to be included in the amount of disgorgement ordered (with prejudgment interest)

in this matter.  Should the Court order restitution to be paid in the criminal action, it may thus

consider whether to offset the amount of disgorgement and prejudgment interest

correspondingly.[9]

### C.    Civil Penalties

The securities laws also provide for civil money penalties to deter future violations.

*See* 15 U.S.C. § 77t(d)(2) (Securities Act); 15 U.S.C. § 78u(d) (Exchange Act); 15 U.S.C.

§ 80b-9(e) (Advisers Act).  The statutes establish three tiers of penalties, to be determined in

light of the facts and circumstances of each case:

---

[9] The restitution hearing is scheduled for March 18, 2013.  *See supra* at 8 & n.5.  As
appropriate, the Commission will update its request for disgorgement following the hearing.

1. For any violation of the securities laws, the Court may impose penalties against individuals and entities in the maximum amounts of $6,500 and $65,000, respectively.

2. For each violation involving fraud or deceit, the Court may impose penalties against individuals and entities in the maximum amounts of $65,000 and $325,000, respectively, or the gross amount of the defendant's pecuniary gain.

3. For each violation involving fraud or deceit which resulted in substantial loss or a significant risk of substantial loss, the Court may impose penalties against individuals and entities in the maximum amounts of $130,000 and $650,000, respectively, or the gross amount of the defendant's pecuniary gain.

*See, e.g.*, 15 U.S.C. § 77t(d)(2) (Securities Act); 17 C.F.R. § 201.1003 & Table III (adjusting for inflation amounts of statutory penalties for violations occurring after Feb. 14, 2005).

Penalties may be assessed for each violation of the securities laws. *See, e.g., SEC v. Henke,* 275 F. Supp. 2d 1075, 1084 (N.D. Cal. 2003); *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 17 (D.D.C. 1998) (multiplying third-tier penalty by the number of investors defrauded as a proxy for number of violations). In determining the appropriate penalty for the Asenqua defendants, the Court may impose the higher maximum amounts allowable for entities.

In this case, Hu and the Asenqua defendants caused substantial losses to least five investors out of at least $4.98 million. The Court may impose third tier penalties (*i.e.*, amounts of $130,000 on Hu and $650,000 on the Asenqua defendants) multiplied by the number of investors. Alternatively, the Court may impose civil penalties on Hu and the Asenqua defendants totaling the amount that they gained from the fraud (*i.e.*, $4.98 million). The Court, in any case, should impose substantial and meaningful penalties on Hu and the Asenqua defendants to reinforce the seriousness of the violations and deter illegal conduct by others.

1  **V.      CONCLUSION**

2          The Commission respectfully requests that the Court grant summary judgment against

3  Hu, enter default judgments against the Asenqua defendants, and order the relief requested by

4  the Commission.

5

6  DATED:  February 27, 2013                    Respectfully submitted,

7

8                                              */s/ Robert L. Tashjian*

9                                              ROBERT L. TASHJIAN

10                                             Attorney for Plaintiff
                                               SECURITIES AND EXCHANGE
11                                             COMMISSION

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28